Daniel F. Van Woerkom (USB #8500)
VW LEGAL COUNSEL
5513 West 11000 North
Suite 302
Highland, Utah 84003
Telephone: (801) 847-7707
Facsimile: (888) 847-7759
Email: dan@vwlegalcounsel.com

Attorneys for Petitioners/Plaintiffs Kim Fisher and Peggy Fisher

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **KIM FISHER, and individual; and PEGGY FISHER, an individual,**<br><br>**Petitioners/Plaintiffs,**<br><br>**vs.**<br><br>**UNITED STATES FOREST SERVICE, an administrative agency of the United States Department of Agriculture; MARY FARNSWORTH, acting in her official capacity as Regional Forester for Region Four, Intermountain Region; SUSAN EICKHOFF, acting in her official capacity as Ashley National Forest Supervisor; KRISTY GROVES, acting in her official capacity of Duchesne/ Roosevelt District Ranger for Ashley National Forest,**<br><br>**Respondents/Defendants** | **PETITION FOR REVIEW OF AGENCY ACTION AND COMPLAINT FOR DECLARATORY RELIEF**<br><br><br><br>**Case No. 4:23-cv-271** |

Kim Fisher and Peggy Fisher (collectively "Fisher"), by and through their attorney Daniel F.

Van Woerkom of VW Legal Counsel, states and alleges as follows:

## INTRODUCTION

1.      Plaintiffs Kim Fisher and Peggy Fisher (collectively "Fisher") are the holders of a "Private Road Special Use Permit" dated November 14, 2018 ("Fisher SUP"). The Fisher SUP authorizes "use of National Forest lands for the maintenance and use of a road within the ASHLEY NATIONAL FOREST . . . [t]o provide access to their private property . . .. The existing non-system road begins off Forest Service Road 106 and . . . reaches the Lake Fork River", where "there are two separate locations allowed for crossing . . .. The routes converge back to one after the stream crossing and continue on to the boundary for the private property." The Fishers worked with the Forest Service to improve the roadway and construct a bridge across the river at one location. Immediately upon completion of the bridge, the Fishers were notified that the road and bridge were in noncompliance and must be removed and their effects mitigated. Correspondence between the parties resulted in a "Notice of Termination" being sent to the Fishers by Susan Eickhoff, Forest Supervisor. The "termination" was appealed to Regional Forester Mary Farnsworth, who dismissed the appeal without discovery, briefing, hearing, or any other form of communication on the matter.

2.      This case asks whether the U.S. Forest Service ("Forest Service") acted in an arbitrary and capricious manner that amounted to an abuse of discretion when: (1) the Forest Service provided a "notice of termination" to Fisher indicating that their special use permit "terminated according to its terms effective January 1, 2023", when the date January 1, 2023 is without any relation to any term of the special use permit whatsoever; and (2) when the Fishers appeal was dismissed based upon the entirely different theory that the Fisher SUP "terminated by its own terms" when ownership of the property was transferred (29 September 2021). Plaintiffs believe this new theory advanced by the Regional Forester fails, as the Fisher SUP was treated as valid in all manners and the 2022 fees were

accepted by the Forest Service.  These actions amounts to a waiver of the "non-transfer of ownership" provision in the Fisher SUP, and the subsequent "termination" of the Fisher SUP based upon the previously-waived provision constitutes arbitrary and capricious action amounting to an abuse of discretion.  As further evidence of the arbitrary and capricious manner of the termination, the purported transfer by the Fishers to their trust was never reviewed at all, let alone in a manner that could reasonably support the conclusion that the transfer was in fact a "transfer of ownership" as required by the terms of the Fisher SUP.

3.       This is a petition for review of U.S. Forest Service ("Forest Service") agency actions. The agency actions are: (1) the dismissal by Regional Forester Mary Farnsworth of Plaintiffs' appeal of the termination of their special use permit; and (2) the act of terminating said special use permit by Forest Supervisor Susan Eickhoff.   This is also a civil action for declaratory relief.  Plaintiffs seek a declaration that Defendants violated federal law, as set forth in the factual allegations and causes of action below, by terminating their special use permit through improper and unlawful means, and in an arbitrary and capricious manner amounting to an abuse of discretion.

4.       Plaintiffs seek a declaration that: (1) their appeal was improperly and unlawfully dismissed as the underlying termination was not "terminated by its own terms" when ownership of the property was transferred (29 September 2021)"; (2) the special use permit was improperly and unlawfully "terminated" on an entirely different date- January 1, 2023- a date which bears no relation to the "terms" of the special use permit; (3) the Fisher SUP is valid, and fact that the Fisher SUP was treated as valid in every respect, and the 2022 fees were accepted by the Forest Service, said actions amount to a waiver of the "non-transfer of ownership" provision in the Fisher SUP, and the subsequent "termination" of the Fisher SUP based upon the previously-waived provision constitutes

arbitrary and capricious action amounting to an abuse of discretion; (4) the purported transfer by the Fishers to their trust was never reviewed at all, let alone in a manner that could reasonably support the conclusion that the transfer was in fact a "transfer of ownership" as required by the terms of the Fisher SUP; and (5) such an improper and unlawful interpretation and application of the terms of the special use permit is arbitrary, capricious, and an abuse of discretion.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the present action by virtue of 28 U.S.C. § 1331 and 28 U.S.C. § 1346 because this action involves the United States as a Defendant, and it arises under the laws of the United States (federal question jurisdiction), including the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq.  An actual, justiciable controversy exists between Plaintiffs and Defendants.  The requested relief is proper under 28 U.S.C. § 2201 and 2202 and 5 U.S.C. §§ 705 & 706.  Plaintiffs have exhausted any available administrative remedies. 7 U.S.C. § 6912(e).  The challenged agency action is final and subject to this Court's review under 5 U.S.C. §§ 702, 704, & 706.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because the events and omissions giving rise to the claims herein occurred within this judicial district, defendants have offices and/or carry out their relevant duties in this district, the public lands and resources in question are located in this district, the damage to Plaintiffs resulting from Defendants' actions will impact persons and properties within this district, and Plaintiffs own real property and personal property in this district.  Ashley National Forest is located within the district.

7.      Plaintiff KIM FISHER is an individual residing in Lehi, Utah, with a real property ownership interest in privately owned land located in Duchesne County, Utah, and located within the

boundaries of the Ashley National Forest. Kim Fisher is a "Holder" of the Special use Permit in question.

## PARTIES

8.     Plaintiff PEGGY FISHER is an individual residing in Lehi, Utah, with a real property ownership interest in privately owned land located in Duchesne County, Utah, and located within the boundaries of the Ashley National Forest. Peggy Fisher is a "Holder" of the Special use Permit in question.

9.     Defendant UNITED STATES FOREST SERVICE is an administrative agency of the United States Department of Agriculture. It and its officers are responsible for the lawful management of the National Forest System.

10.     Defendant MARY FARNSWORTH is sued in her official capacity as Regional Forester for Region Four, Intermountain Region. Regional Forester Farnsworth issued the letter dated 28 March 2023 dismissing the appeal of the notice of Termination of Special Use Authorization RST537301 "due to the permit being terminated by its own terms when ownership of the property was transferred [29 September 2021]".

11.     Defendant SUSAN EICKHOFF is sued in her official capacity as Ashley National Forest Supervisor. Forest Supervisor Eickhoff Regional Forester Farnsworth issued the Notice of Termination letter dated 20 January 2023, terminating Special Use Authorization RST537301 "according to its terms effective January 1, 2023".

12.     KRISTY GROVES is sued in her official capacity of Duchesne/ Roosevelt District Ranger for Ashley National Forest. District Ranger Groves issued multiple unlawful demand letters to Plaintiffs culminating in the letter dated 7 December 2022, demanding the unlawful

mitigation/removal of a road and bridge built by Plaintiffs and reconstruction of said bridge to unlawful requirements that are not applicable to a private bridge and private road.

## STATEMENT OF FACTS

*Dismissal of Appeal by Regional Forester Farnsworth*

13.     Regional Forester Farnsworth issued the letter dated 28 March 2023 "dismissing the appeal of the Notice of Termination of Special Use Authorization RST537301" filed by counsel on behalf of Plaintiffs Kim Fisher and Peggy Fisher (the "Appeal Dismissal Letter") (attached as Exhibit A).

14.     The Appeal Denial Letter begins: "On January 20, 2023 the Fishers were notified of the termination of special use authorization RST537301, issued November 14, 2018, for the purpose of providing access on a non-system road located on National Forest System lands to private property." In its introductory paragraph, the Forest Service continues it pattern of misstating key facts. As the Fisher SUP points out, the "non-system road" ("Private Road") between Forest Service Road and the Fishers' private property already existed. What is not recognized or explained is why the road already existed. The Fishers used and maintained a historical access along the same route that has existed since the early 1900s without any form off Forest Service recognition or approval.

15.     The Appeal Dismissal Letter continues: "The letter clarified that the permit was being terminated due to the transfer of ownership status of the accessed property."

16.     The Appeal Dismissal Letter then quotes paragraph 24 of the Fisher SUP: "24. Assignability. This authorization is not transferrable or assignable. If Holder, through death, voluntary transfer, enforcement of contract, foreclosure, or other valid legal proceeding shall cease to be the owner of the above-described real property accessed by the authorized road, this authorization

will terminate", and continues "In accordance with 36 CFR 251.60(a)(2)(iii), a special use authorization terminates when, by its terms, a fixed or agreed upon condition, event, or time occurs, and is not subject to administrative or judicial review." Unaware that their deed may violate paragraph 24 of the Fisher SUP, the Fishers deeded the Fisher Property from themselves as individuals to their trust on September 19, 2021. The Fisher SUP is attached hereto as Exhibit D.

17. The Appeal Dismissal Letter concludes as follows: "I am dismissing the appeal without review because the termination is not appealable due to the permit being terminated by its own terms when ownership of the property was transferred (36 CFR 214.10(a)(3) and 251.60(a)(2)(iii))." The Fisher Appeal is attached hereto as Exhibit E.

18. Regional Forester Farnsworth's transparent attempt to white-wash Forest Supervisor Eickhoff's improper and unlawful Notice of Termination both misstates the Notice of Termination and mis-characterizes the application of applicable law.

*Forest Supervisor Eickhoff's Notice of Termination*

19. In so doing, Regional Forester Farnsworth purposely misstates the Notice of Termination. Forest Supervisor Eickhoff's Notice of Termination dated January 20, 2023 (attached as Exhibit B), did not terminate the Fisher SUP "by its own terms when ownership of the property was transferred". Rather, Forest Supervisor Eickhoff purported to terminate the Fisher SUP "according to its terms effective January 1, 2023".

20. The date January 1, 2023 is without any relation to any term of the special use permit whatsoever. As such it is arbitrary, capricious, and amounts to an abuse of discretion. The reason behind Forest Supervisor Eickhoff's selection of January 1, 2023 as the date of termination becomes clear only upon a closer look at the underlying facts.

21. Again, Paragraph 24 of the Fisher SUP states:

"24. Assignability. This authorization is not assignable or transferable. If Holder, through death, voluntary transfer, enforcement of the contract, foreclosure, or other valid legal proceeding shall cease to be the owner of the above-described real property accessed by the authorized road, this authorization will terminate." (see Exhibit B).

22. 36 CFR 251.59, upon which paragraph 24 of the Fisher SUP is based, states:

"If the holder, through death, voluntary sale, transfer, or through enforcement of a valid legal proceeding or operation of law, ceases to be the owner of the authorized improvements, the authorization terminates upon the change of ownership." (emphasis added). (attached hereto as Exhibit E).

23. The Notice of Termination, dated January 20, 2023, states:

"This is formal notification that special use authorization, RST537301, issued to you on November 14, 2018, for the purpose of providing access on a non-system road located on National Forest System lands to your private property terminated according to its terms effective January 1, 2023." (emphasis added).

24. The Notice of Termination then advises:

"Title 36 of the Code of Federal Regulations at 251.60(a)(2)(iii) provides that when a special use authorization terminates according to its terms, there is no agency action, and the termination is not subject to agency or judicial review."

25. The referenced code section 36 CFR 251.60(a)(2)(iii) states:

"(iii) Termination. For all special uses except noncommercial group uses, a special use authorization terminates when, by its terms, a fixed or agreed-upon condition, event, or time occurs. Termination of a special use authorization under this paragraph does not involve agency action and is not subject to administrative or judicial review." (emphasis added). (attached hereto as Exhibit F).

26. According to Ms. Eickhoff, the Fisher's transfer of their property to a trust terminated the Fisher SUP according to its terms on January 1, 2023. However, the Fisher's transferred the

property to their trust on September 29, 2021 (attached hereto as Exhibit D ("Fisher Deed")), approximately 15 months prior to the Ms. Eickhoff's termination of the Fisher SUP. If the Fisher SUP truly terminated according to its terms, which it did not, it would have terminated on September 29, 2021. Instead, the Forest Service expressly acknowledged the Fisher's continued ownership of the property, by for example, receiving and applying their 2022 Annual Land Use Fee payment.

27.    36 CFR 251.60(a)(2)(iii) supports this conclusion: "(iii) Termination. For all special uses except noncommercial group uses, a special use authorization terminates when, by its terms, a fixed or agreed-upon condition, event, or time occurs. Termination of a special use authorization under this paragraph does not involve agency action and is not subject to administrative or judicial review." (see Exhibit E).

28.    No "agreed-upon condition, event, or time" occurred on January 1, 2023. This is an arbitrary date selected by the Forest Service with no relevance to the underlying facts used to support its action. Thus, pursuant the terms of the special use permit and federal law, the Fisher SUP did not and, in fact, cannot "terminate" according to its terms on January 1, 2023, and any such purported action amount to arbitrary and capricious action amounting to an abuse of discretion.

*Actions taken by or authorized by District Ranger Kristy Groves*

29.    The Forest Service, in spite of knowing that the Fishers had transferred their property to their trust on September 19, 2021, accepted payment for the Fisher SUP for the year 2022.

30.    On September 21, 2021, Forest Service employee Rhett Burkman contacted the Fishers regarding the deeding of the property to the trust. Burkman stated that the Fishers would likely have to apply for a new SUP under the name of the trust, and that said process would necessitate a review of the trust document itself.

31.     On May 26, 2022, the Fishers were contacted by Burkman and told that their special use permit payment was received and accepted for 2022.  Burkman specifically stated that he questioned whether the special use permit was still in effect and District Ranger Groves indicated to him that the special use permit was still in effect.

32.     The Forest Service issued multiple letters to the Fishers advising them of non-compliance with the Fisher SUP.  In a letter dated 7 December 2022 ("Groves Letter") (attached as Exhibit C), District Ranger Kristy Groves demanded a mitigation plan for an unauthorized road, alterations to the riverbed and banks of the Lake Fork River, and removal of a prohibited bridge, but never indicates that the Fisher SUP has been terminated.  In fact, the continued implication is that the "unauthorized" and "prohibited" actions were not authorized or allowed by the existing Fisher SUP. Importantly, District Ranger Groves states: "When the environmental analysis is complete and a decision document is signed by me as the authorized officer, a special use permit can be issued **to the trust** . . .." (emphasis added).  The Forest Service knew about the deed to the trust in 2021 yet never referenced having terminated the Fisher SUP according to its terms.  Rather, the Fishers were allowed to work toward resolving issues and disputes regarding the road and bridge.  This letter is the culmination of much communication and discussion between the parties regarding the road and bridge.  None of that communication references the Fishers' deed to the trust or the termination of the Fisher SUP.

33.     The Forest Service issued the Fisher SUP with full knowledge of its terms and conditions, including paragraph 24.  The Forest Service knew of the Fisher's transfer to their trust. Nonetheless, the Forest Service continued to treat the Fisher SUP as valid and in continuing effect by accepting payment for 2022 and its continued enforcement attempts.  By its actions and statements,

the Forest Service intentionally relinquished its alleged right to terminate the Fisher SUP by its terms with respect to transferability.

34. The Forest Service's waiver of its alleged right to terminate the Fisher SUP has caused the Fishers to expend significant funds in professional fees for attorneys, civil engineers, structural engineers, and environmental engineers in their efforts to review construction standards and practices for the road and the bridge, mitigation factors regarding the alleged impact to wetlands, and processing the requests

35. Further, the purported transfer by the Fishers to their trust was never reviewed in a manner that could reasonably support the conclusion that the transfer was in fact a "transfer of ownership" as required by the terms of the Fisher SUP, and such an improper and unlawful interpretation and application of the terms of the special use permit is arbitrary, capricious, and an abuse of discretion.

*Factual Background*

36. Kim and Peggy Fisher are the current owners of homesteaded real property surrounded on three sides by USFS land and on the fourth side by the Ute Tribe. The Fishers had (and continue to have) access to the Fisher Property by virtue of the historic use of a right of way across USFS land. This historic right of way was documented in the patent from the Federal government. The Fishers obtained the property from Kim Fisher's family in 2001 and continue to use this access today.

37. From March to October, safe access across the river is often not possible because of excessive runoff. In the past, the Ute Tribe provided short-term access during the spring months through their road systems to the Fisher Property. However, in approximately 2018, the Ute Tribe

denied any further access through their property. This denial was taken to Jeff Schramm who indicated the appropriate solution was a special use permit.

38.     Because of their historic right of way, the Fisher' did not need a special use permit simply to access the Fisher Property; the Fisher's only need for a special use permit was to safely access their property year-round by means of an improved roadway and the construction of a new bridge.

39.     The Fishers used their special use permit as the basis for working with Forest Service personnel to improve a roadway and construct a bridge. The Fishers met with various Forest Service representatives to this end and believed their roadway and bridge to be approved based upon communication with Forest Service personnel.

40.     Only after the bridge was fully constructed did the Forest Service indicate it was built without proper approvals. Much discussion ensued. Ms. Groves consistently took the position that the bridge and roadway must be removed and rebuilt to her specifications.

41.     When it became apparent to Ms. Groves that the Fishers are willing to follow the law but not to be bullied, she turned to Forest Supervisor Eickhoff with the ill-conceived idea of "terminating" the special use permit under the auspice that the Fishers had transferred ownership of the property benefited by the special use permit to their trust, resulting in the Notice of Termination by Forest Supervisor Eickhoff. The disingenuous nature of this approach is evidenced by various Forest Service Letters written after the Fishers deeded the property to their trust, including a letter on November 15, 2021 wherein District Ranger Groves stated "You are not authorized to use the road or bridge and any continued use thereof *will result in action to terminate your permit*." (See USFS Letters attached as Exhibit F)(emphasis added).

42.     The Fisher SUP contains an attorneys fees provision.

*Prejudice and Damage to the Fishers*

43.      The Appellants are being adversely affected by the Notice of Termination as follows:

a.      Without an authorized right of way including use of the improved roadway and newly constructed bridge, the Fishers cannot reasonably and safely access their property year-round, forcing dangerous and life-threatening access by the only means possible: fording the river.

b.      Further, the Fishers cannot make full and reasonable use of their grazing permit without use of the improved roadway and newly constructed bridge.

c.      Additionally, the Notice of Termination was issued during an ongoing process of resolving with the District Ranger Kristy Groves whether the roadway and bridge were properly constructed under the existing Fisher SUP.  District Ranger Groves has repeatedly attempted to bully the Fishers into removing the bridge and constructing a new one built to her personal requirements, above and beyond what may be required as described in the CFR and in the Forest Service Manual and Handbooks.  The Fishers continue to be adversely affected by the ongoing arbitrary, capricious, and illegal acts of reprisal by District Ranger Groves, and now Forest Supervisor Eickhoff and Regional Forester Farnsworth, as their actions and decisions to not comport with the laws, rules, or regulations, which are being unlawfully and unfairly applied in an arbitrary and capricious manner that constitutes an abuse of discretion.  and discriminatorily applied against the Fishers for improper purposes and by improper means, in violation of their rights to equal protection under the law.

d.      To the extent the decision threatens to remove the existing bridge and road, the Fishers are and will be adversely affected by such action.  To remove the bridge and road is to destroy the Fisher's ability to properly assess and measure any impact the bridge or road have or will have on

the surroundings.  The inability to assess impact impairs the Fisher's ability to work with other government agencies, such as the Army Corp or EPA, and, ironically, would even impact the Fisher's ability to submit the application for a new SUP requested by the Forest Service in its Notice of Termination.  Such action would interfere with the Fishers meaningful opportunity to demonstrate the ways in which the bridge and road satisfy any necessary requirements and the terms and conditions of the existing Fisher SUP.

e.      The Forest Service's Waiver of the assignability clause and the Fishers' reliance thereon has cause the Fishers to expend significant time and money on attorneys, civil and structural engineers, environmental engineers, and other professions.

### FIRST CLAIM FOR RELIEF
**(Defendants dismissal of the Fishers' appeal was arbitrary, capricious, and an abuse of discretion because the dismissal improperly stated the facts and law supporting the termination and failed to consider Defendants' waiver of the assignability provision in the Fisher SUP)**

44.     Petitioners incorporate by reference paragraphs 1 through 43 of this petition as if set forth fully herein.

45.     Regional Forester Farnsworth issued the letter dated 28 March 2023 "dismissing the appeal of the Notice of Termination of Special Use Authorization RST537301" filed by counsel on behalf of Plaintiffs Kim Fisher and Peggy Fisher (the "Appeal Dismissal Letter").

46.     The Appeal Denial Letter begins: "On January 20, 2023 the Fishers were notified of the termination of special use authorization RST537301, issued November 14, 2018, for the purpose of providing access on a non-system road located on National Forest System lands to private property."  In its introductory paragraph, the Forest Service continues it pattern of misstating key facts.  As the Fisher SUP points out, the "non-system road" ("Private Road") between Forest Service

Road and the Fishers' private property already existed. What is not recognized or explained is why the road already existed. The Fishers used and maintained a historical access along the same route that has existed since the early 1900s without any form off Forest Service recognition or approval.

47. The Appeal Dismissal Letter continues: "The letter clarified that the permit was being terminated due to the transfer of ownership status of the accessed property."

48. The Appeal Dismissal Letter then quotes paragraph 24 of the Fisher SUP: "24. Assignability. This authorization is not transferrable or assignable. If Holder, through death, voluntary transfer, enforcement of contract, foreclosure, or other valid legal proceeding shall cease to be the owner of the above-described real property accessed by the authorized road, this authorization will terminate", and continues "In accordance with 36 CFR 251.60(a)(2)(iii), a special use authorization terminates when, by its terms, a fixed or agreed upon condition, event, or time occurs, and is not subject to administrative or judicial review." Unaware that their deed may violate paragraph 24 of the Fisher SUP, the Fishers deeded the Fisher Property from themselves as individuals to their trust on September 19, 2021.

49. The Appeal Dismissal Letter concludes as follows: "I am dismissing the appeal without review because the termination is not appealable due to the permit being terminated by its own terms when ownership of the property was transferred (36 CFR 214.10(a)(3) and 251.60(a)(2)(iii))."

50. Regional Forester Farnsworth's transparent attempt to white-wash Forest Supervisor Eickhoff's improper and unlawful Notice of Termination both misstates the Notice of Termination and mis-characterizes the application of applicable law.

51.     Regional Forester Farnsworth purposely misstates the Notice of Termination.  Forest Supervisor Eickhoff's Notice of Termination dated January 20, 2023, did not terminate the Fisher SUP "by its own terms when ownership of the property was transferred".  Rather, Forest Supervisor Eickhoff purported to terminate the Fisher SUP "according to its terms effective January 1, 2023".

52.     The date January 1, 2023 is without any relation to any term of the special use permit whatsoever.  As such it is arbitrary, capricious, and amounts to an abuse of discretion.  The reason behind Forest Supervisor Eickhoff's selection of January 1, 2023 as the date of termination becomes clear only upon a closer look at the underlying facts as set forth below.

53.     Again, Paragraph 24 of the Fisher SUP states:

> "24. Assignability.  This authorization is not assignable or transferable.  If Holder, through death, voluntary transfer, enforcement of the contract, foreclosure, or other valid legal proceeding shall cease to be the owner of the above-described real property accessed by the authorized road, this authorization will terminate." (see Exhibit B).

54.     36 CFR 251.59, upon which paragraph 24 of the Fisher SUP is based, states:

> "If the holder, through death, voluntary sale, transfer, or through enforcement of a valid legal proceeding or operation of law, ceases to be the owner of the authorized improvements, the authorization terminates upon the change of ownership." (emphasis added). (attached hereto as Exhibit E).

55.      The Notice of Termination, dated January 20, 2023, states:

> "This is formal notification that special use authorization, RST537301, issued to you on November 14, 2018, for the purpose of providing access on a non-system road located on National Forest System lands to your private property terminated according to its terms effective January 1, 2023." (emphasis added).

56.      The Notice of Termination then advises:

> "Title 36 of the Code of Federal Regulations at 251.60(a)(2)(iii) provides that when a special use authorization terminates according to its terms, there

is no agency action, and the termination is not subject to agency or judicial review."

57.     The referenced code section 36 CFR 251.60(a)(2)(iii) states:

> "(iii) Termination.  For all special uses except noncommercial group uses, a special use authorization terminates when, by its terms, a fixed or agreed-upon condition, event, or time occurs.  Termination of a special use authorization under this paragraph does not involve agency action and is not subject to administrative or judicial review." (emphasis added). (attached hereto as Exhibit F).

58.     According to Ms. Eickhoff, the Fisher's transfer of their property to a trust terminated the Fisher SUP according to its terms on January 1, 2023.  However, the Fisher's transferred the property to their trust on September 29, 2021 (attached hereto as Exhibit D ("Fisher Deed")), approximately 15 months prior to the Ms. Eickhoff's termination of the Fisher SUP.  If the Fisher SUP truly terminated according to its terms, which it did not, it would have terminated on September 29, 2021.  Instead, the Forest Service expressly acknowledged the Fisher's continued ownership of the property as set forth herein.

59.     36 CFR 251.60(a)(2)(iii) supports this conclusion:

> "(iii) Termination.  For all special uses except noncommercial group uses, a special use authorization terminates when, by its terms, a fixed or agreed-upon condition, event, or time occurs.  Termination of a special use authorization under this paragraph does not involve agency action and is not subject to administrative or judicial review." (see Exhibit E).

60.     No "agreed-upon condition, event, or time" occurred on January 1, 2023.  This is an arbitrary date selected by the Forest Service with no relevance to the underlying facts used to support its action.  Thus, pursuant the terms of the special use permit and federal law, the Fisher SUP did not and, in fact, cannot "terminate" according to its terms on January 1, 2023, and any such purported action amount to arbitrary and capricious action amounting to an abuse of discretion.

61.     The Forest Service's actions set forth above constitute arbitrary and capricious agency action, an abuse of discretion, or otherwise not in accordance with law.

62.     The Court should hold these actions unlawful and set aside the agency's termination of the Fisher SUP.

## SECOND CLAIM FOR RELIEF
**(Defendants dismissal of the Fishers' appeal was arbitrary, capricious, and an abuse of discretion because the Defendants' actions and statements constitute waiver of the assignability provision in the Fisher SUP)**

63.      Petitioners incorporate by reference paragraphs 1 through 62 of this petition as if set forth fully herein.

64.     The Forest Service, in spite of knowing that the Fishers had transferred their property to their trust, accepted payment for the Fisher SUP for the year 2022.

65.     On September, 2021, Forest Service employee Rhett Burkman contacted the Fishers regarding the deeding of the property to the trust.  Burkman stated that the Fishers would likely have to apply for a new SUP under the name of the trust, and that said process would necessitate a review of the trust document itself.

66.     On May 26, 2022, the Fishers were contacted by Burkman and told that their special use permit payment was received and accepted for 2022.  Burkman specifically stated that he questioned whether the special use permit was still in effect and District Ranger Groves indicated to him that the special use permit was still in effect.

67.     The Forest Service issued multiple letters to the Fishers advising them of non-compliance with the Fisher SUP.  In a letter dated 7 December 2022, District Ranger Kristy Groves demanded a mitigation plan for an unauthorized road, alterations to the riverbed and banks of the Lake Fork River, and removal of a prohibited bridge, but never indicates that the Fisher SUP has been

terminated. In fact, the continued implication is that the "unauthorized" and "prohibited" actions were not authorized or allowed by the existing Fisher SUP. Importantly, District Ranger Groves states: "When the environmental analysis is complete and a decision document is signed by me as the authorized officer, a special use permit can be issued to the trust . . .." (emphasis added). The Forest Service knew about the deed to the trust in 2021 yet never referenced having terminated the Fisher SUP according to its terms. Rather, the Fishers were allowed to work toward resolving issues and disputes regarding the road and bridge. This letter is the culmination of much communication and discussion between the parties regarding the road and bridge. None of that communication references the Fishers' deed to the trust or the termination of the Fisher SUP.

68. The Forest Service issued the Fisher SUP with full knowledge of its terms and conditions, including paragraph 24. The Forest Service knew of the Fisher's transfer to their trust. Nonetheless, the Forest Service continued to treat the Fisher SUP as valid and in continuing effect by accepting payment for 2022 and its continued enforcement attempts. By its actions and statements, the Forest Service intentionally relinquished its alleged right to terminate the Fisher SUP by its terms with respect to transferability.

69. The Forest Service's waiver of its alleged right to terminate the Fisher SUP has caused the Fishers to expend significant funds in professional fees for attorneys, civil engineers, structural engineers, and environmental engineers in their efforts to review construction standards and practices for the road and the bridge, mitigation factors regarding the alleged impact to wetlands, and processing the requests

70. The Forest Service's actions set forth above constitute arbitrary and capricious agency action, an abuse of discretion, or otherwise not in accordance with law.

71.     The Court should hold these actions unlawful and set aside the agency's termination of the Fisher SUP.

### THIRD CLAIM FOR RELIEF
**(Defendants dismissal of the Fishers' appeal of the Notice of Termination in the Appeal Dismissal Letter was arbitrary, capricious, and an abuse of discretion because the purported transfer by the Fishers to their trust was never reviewed in a manner that could reasonably support the conclusion that the transfer was in fact a "transfer of ownership" as required by the terms of the Fisher SUP)**

72.     Petitioners incorporated by reference paragraphs 1 through 71 of this petition as if set forth fully herein.

73.     The Appeal Dismissal Letter states: "The letter clarified that the permit was being terminated due to the transfer of ownership status of the accessed property."

74.     The Appeal Dismissal Letter then quotes paragraph 24 of the Fisher SUP: "24. Assignability.  This authorization is not transferrable or assignable.  If Holder, through death, voluntary transfer, enforcement of contract, foreclosure, or other valid legal proceeding shall cease to be the owner of the above-described real property accessed by the authorized road, this authorization will terminate", and continues "In accordance with 36 CFR 251.60(a)(2)(iii), a special use authorization terminates when, by its terms, a fixed or agreed upon condition, event, or time occurs, and is not subject to administrative or judicial review."  Unaware that their deed may violate paragraph 24 of the Fisher SUP, the Fishers deeded the Fisher Property from themselves as individuals to their trust on September 19, 2021.

75.     On September 21, 2021, Forest Service employee Rhett Burkman contacted the Fishers regarding the deeding of the property to the trust.  Burkman stated that the Fishers would likely have to apply for a new SUP under the name of the trust, and that said process would necessitate a review of the trust document itself.

76.     On May 26, 2022, the Fishers were contacted by Rhett Burkman and told that their special use permit payment was received and accepted for 2022.  Rhett Burkman specifically stated that he questioned whether the special use permit was still in effect and District Ranger Groves indicated to him that the special use permit was still in effect.

77.     The purported transfer by the Fishers to their trust was never reviewed at all, and thus never reviewed in a manner that could reasonably support the conclusion that the transfer was in fact a "transfer of ownership" as required by the terms of the Fisher SUP.

78.     The Forest Service's termination of the Fisher SUP is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

79.     The Court should hold these actions unlawful and set aside the agency's Termination of SUP.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs/Petitioners respectfully request that this Court:

A.     Declare that the Defendants/Respondents dismissal of the Fishers' appeal of the termination of the Fisher SUP found in the Notice of Termination letter be found arbitrary, capricious, and an abuse of discretion because:

      i.     the Appeal Dismissal Letter improperly concluded that the Fisher SUP was terminated "on its terms";

     ii.     the Notice of Termination letter improperly terminated the Fisher SUP on a date and for a reason other than contained in the terms of the Fisher SUP; and

      iii.       both the Appeal Dismissal Letter and the Notice of Termination failed to consider Defendants' waiver of the applicable transfer provision in the Fisher SUP.

B.      Declare that the Defendants/Respondents dismissal of the Fishers' appeal of the termination of the Fisher SUP found in the Notice of Termination letter be found arbitrary, capricious, and an abuse of discretion because the purported transfer by the Fishers to their trust was never reviewed in a manner that could reasonably support the conclusion that the transfer was in fact a "transfer of ownership" as required by the terms of the Fisher SUP.

C.      Set aside the dismissal of the Fisher appeal found in the Appeal Dismissal Letter.

D.      Set aside the termination of the Fisher SUP found in the Notice of Termination.

E.      Declare that the Fisher SUP is valid and binding and that the Forest Service has waived the assignability clause in paragraph 24 of the Fisher SUP.

F.      For costs and attorneys fees pursuant to the Fisher SUP.

G.      For such further relief as may seem just, proper and equitable to this Court.

DATED this 27th day of April, 2023.

**VW LEGAL COUNSEL**

/s/ Daniel F. Van Woerkom
Daniel F. Van Woerkom
Attorney for Petitioners/Plaintiffs

**Attachments to Complaint**

Exhibit A- Appeal Dismissal Letter

Exhibit B- Notice of Termination

Exhibit C- Groves Letter

Exhibit D- Fisher Special Use Permit

Exhibit E- Fisher Appeal

Exhibit F- USFS Demand Letters

**Petitioners/Plaintiffs Address**

Kim and Peggy Fisher
1680 West Main St.
Lehi, UT 84043